```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

IMMUNEX CORPORATION, et al.,    .
                                .
      Plaintiffs,               .
                                . Case No. 16-cv-01118
vs.                             .
                                . Newark, New Jersey
SANDOZ INC., et al.,            . October 18, 2017
                                .
      Defendants.               .
                                .
```

```
                 TRANSCRIPT OF RECORDED OPINION
                  BY THE HONORABLE MARK FALK
                  UNITED STATES MAGISTRATE JUDGE
```

This oral opinion has been reviewed and revised in accordance with L. Civ. R. 52.1

This transcript has been **SEALED (AVAILABLE FOR PARTIES; NOT AVAILABLE FOR THE PUBLIC)** pursuant to Loc. Civ. R. 5.3(c)(2).

APPEARANCES:

For the Plaintiffs:    No one was present

For the Defendants:    No one was present

Audio Operator:

Transcription Service:    KING TRANSCRIPTION SERVICES
                          3 South Corporate Drive, Suite 203
                          Riverdale, NJ  07457
                          (973) 237-6080

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

1        (Commencement of proceedings)

2

3        THE COURT:  Okay.  This is the case of Immunex
4   Corp. versus Sandoz.  It is Docket 16-1118.
5        This is a patent infringement suit pursuant to the
6   Biologics Price Competition and Innovation Act, ("the
7   BPCIA"), relating to plaintiff's anti-inflammatory drug
8   etanercept, or "Enbrel."  There are five asserted patents in
9   the case: the '182 Patent; the '522 Patent; the '225 Patent;
10  the '605 Patent; and the '631 Patent.
11       Procedurally, District Judge Cecchi held a <u>Markman</u>
12  proceeding on February 15, 2017.  Discovery technically
13  closed on June 30, 2017.  However, recent correspondence
14  indicates that discovery of some sort continued past that
15  date.  It should also be mentioned that there is a pending
16  application to the Court to compel production of privileged
17  documents and for other relief, which would -- or could --
18  impact fact discovery.
19       Opening expert reports were served on August 28,
20  2017.
21       Responsive expert reports are due October 23, 2017.
22       Reply expert reports are due November 29, 2017.
23       And all expert discovery is to close January 19,
24  2018.
25       Dispositive motions are due January 30, 2018.

1           There are also pending various motions to seal
2    discovery letters and a motion for summary judgment of
3    infringement of Claim 1 of the '631 Patent.  A trial date is
4    set for April 17, 2018.
5           From the outset, it has been made clear by counsel
6    that this case is on a tight schedule that the Court and
7    counsel all intend to comply with.
8           The current dispute was raised by letters dated
9    September 21 from the plaintiff; October 3 from the
10   defendant; October 10 from the plaintiff; and October 16 from
11   the defendant.
12          Plaintiff requests to strike "improper portions" of
13   the report of one of defendant's experts, Dr. Carl Blobel.
14   The "improper portions" are described as:  (1) Newly
15   disclosed references and theories of invalidity in connection
16   with § 102(g); and (2) aspects of the report that rely on
17   "improperly obtained evidence that is also inadmissible
18   hearsay" (described as a declaration from a witness,
19   Dr. Bruce Beutler, located in Texas).
20          Defendant opposes the application and contends that
21   its references and theories of invalidity were already
22   sufficiently disclosed; that, if necessary, it should be
23   permitted to amend its invalidity contentions; and that the
24   declaration from Dr. Beutler was obtained from a subpoena
25   issued during fact discovery and with plaintiff's knowledge.

1           First, I will address the newly disclosed
2  references and theories of invalidity argument.  Plaintiff's
3  contention is that Dr. Blobel's report improperly advanced
4  new theories and arguments of invalidity, pursuant to
5  § 102(g), based on two allegedly newly designated pieces of
6  prior art -- the "Smith '635 application" and "the Lauffer
7  '703 application."
8           Patent Rule 3.3(a) provides that invalidity
9  contentions shall contain the following:  "Prior art under 35
10 U.S.C. § 102(g) shall be identified by providing the
11 identities of the person or entities involved in and the
12 circumstances surrounding the making of the invention before
13 the patent applicant."  L. Patent R. 3.3(a).
14          Defendant claims that it has identified the persons
15 involved and the circumstances of their research in
16 compliance with Rule 3.3.  It claims the Lauffer application
17 was addressed in plaintiff's responsive contentions and
18 therefore Immunex was clearly on notice of defendant's intent
19 to rely on it.  As for the Smith application, it issued at
20 the Smith '760 Patent, which is expressly detailed in
21 defendant's invalidity contentions.
22          Plaintiff contends that defendant did not disclose
23 either the Smith or the Lauffer applications in their
24 invalidity contentions at all.  It claims that defendant
25 identified other applications and patents within the families

1  involved, but that the patent rules require more; that is a
2  showing where each item of prior art anticipates each
3  asserted claim or renders it obvious (Rule 3.3(b)), and a
4  chart identifying where "specifically in each alleged item of
5  prior art, each limitation of each asserted claim is found."
6  Rule 3.3(c).
7          "The local patent rules exist to further the goal
8  of full, timely discovery and provide all parties with
9  adequate notice and information with which to litigate their
10 case." <u>King Pharmaceuticals Inc. v. Sandoz</u>, 2010 WL
11 2015258 * 4 (D.N.J. May 20, 2010).  The patent rules "are
12 designed to require the parties to crystallize their theories
13 of the case early in the litigation and to adhere to those
14 theories once they have been disclosed." <u>Celgene Corp. v.
15 Natco Pharma Ltd.</u>, 2015 WL 4138982 *4 (D.N.J. July 9, 2015).
16          The Court concludes that defendant did not
17 adequately disclose the '635 Smith application and the
18 Lauffer '703 application within the contemplation of the
19 patent rules.  First, the two items are not expressly
20 discussed in the invalidity contentions, nor do defendant's
21 invalidity contentions expressly disclose that they believe
22 either reference to constitute "constructive reduction to
23 practice."
24          Second, referencing a patent family tree that
25 includes within it a bunch of other applications and patents

1   (related or not) and claiming it is sufficient does not
2   square with the letter of the patent rules; i.e., the
3   disclosure of crystallized theories early in the case. Id.
4           Third, the Court rejects the notion that the patent
5   rules only require "the identities of the persons or entities
6   involved and the circumstances surrounding the making of the
7   invention before the patent application" for prior art under
8   § 102(g). This argument ignores the requirements of
9   subsections (B) and (C) of Rule 3.3, which are express and
10  require a relatively high level of specificity.
11          Having concluded the references and theories were
12  not disclosed, the question becomes how to address the
13  problem. The references could be stricken from the expert
14  report, or the Court could permit defendant's alternative
15  request to amend invalidity contentions to include them.
16          Local Patent Rule 3.7 governs requests to amend
17  contentions. The rule allows for amendments "only by order
18  of the Court upon a timely application and showing of good
19  cause." Id. Good cause "considers first whether the moving
20  party was diligent in amending its contentions." Id. If the
21  moving party was diligent and good cause has been shown, the
22  question becomes whether the "nonmoving party would suffer
23  prejudice if the motion to amend were granted." AstraZeneca
24  v. Dr. Reddy's, 2013 WL 1145359 *3 (D.N.J. March 18, 2013).
25          Rule 3.7 provides a nonexhaustive list of examples

that may support a finding of good cause:  "(a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art, despite earlier diligent searches; (c) recent discovery of nonpublic information about the accused instrumentality which was never discovered, despite diligent efforts, before the service of the infringement contentions; (d) disclosure of an infringement contention by a Hatch-Waxman party asserting infringement ... that requires response by the adverse party because it was not previously presented or reasonably anticipated...."  Id.

Courts have also considered the following in determining whether good cause exists: reason for the delay; importance of the information to be excluded; the danger of unfair prejudice; the availability of a continuance; and the potential impact of a delay on judicial proceedings.  See, e.g., International Development LLC v. Simon Nicholas Richmond and Adventive Ideas, LLC, 2010 WL 3946714 *3 (D.N.J. October 4, 2010).  In sum, amendment will be permitted where there is "a timely application, there is a showing of good cause, and the adverse party does not suffer undue prejudice."  Celgene Corp., 2015 WL 4138982 *4.

In considering whether an amendment should be permitted, a threshold issue is whether the amendment is timely.  Plaintiff claims the amendment is not timely because

1  defendant has known about the omitted references since they
2  served their invalidity contentions in the case.  Defendant
3  counters that the Lauffer application was not obtained until
4  after its invalidity contentions were served and that the
5  Smith application is referenced in the invalidity contentions
6  in the sense that a patent that issued from the application
7  is expressly relied on and disclosed.
8         The Court believes the application is sufficiently
9  timely:  One, defendant claims that it believed (and
10 believes) that its contentions are sufficiently identified
11 and there is no need for an amendment, a belief that it
12 represents was in good faith.  It could be found that these
13 references were alluded to and that defendant was on notice.
14 While not technically disclosed with specificity as required
15 by the rules, they aren't a complete surprise, so it is not
16 unreasonable to say that Plaintiff moved promptly upon it
17 being raised, that their references were deficient.  Two, the
18 Lauffer application was obtained after invalidity contentions
19 were served, so it could not be expressly included in
20 invalidity contentions.  Moreover, certainly, the Lauffer
21 application was discussed in plaintiff's responsive
22 contentions and the patent that was issued based on the Smith
23 application was also discussed in both defendant's
24 contentions and plaintiff's response.  Courts have allowed
25 amendments when they are based upon previously disclosed,

1   albeit not direct, references.  See Kilopass Technology, Inc.
2   v. Sidense Corp., 2012 WL 1901198 *3 (N.D. Cal. May 24, 2012)
3   (granting motion to amend when the amendment did not
4   substantially depart from that what was disclosed
5   originally).
6         The issue then becomes one of prejudice.  However,
7   the parties have not provided detailed information on this
8   subject.  The tension would seem to be the tight scheduling
9   order in this case.  Based on the information provided and
10  the reasons given, the Court will conditionally permit the
11  amendment of the contentions and allow plaintiff to advise
12  the Court what steps and accommodations are needed to
13  alleviate any prejudice.  The Court will be extremely
14  accommodative in permitting plaintiff what it seeks to
15  alleviate prejudice.  This could include further discovery,
16  cost sharing, changing of the dates of expert submissions,
17  etc.
18        The parties are directed to immediately meet and
19  confer on this subject.  If there is further information to
20  be provided to the Court or if the parties cannot reach
21  agreement, the parties should immediately contact the Court.
22        In making this decision, in addition to the local
23  patent rules which have been cited, the Court notes that this
24  can be analogized to the exclusion of evidence, which has
25  been described as an "extreme" sanction, not normally imposed

absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence. <u>Konstantopoulos v. Westvaco Corp.</u>, 112 F.3d 710, 719 (3d Cir. 1997) (quoting <u>Meyers v. Penny Pack Woods Home Ownership Association</u>, 559 F.2d 894, 905 (3d Cir. 1977)). That line of authority makes clear that the availability of alternative sanctions and importance of the potentially excluded evidence should be considered prior to excluding the evidence at trial. Here, in this important case, the undersigned is especially hesitant to exclude what the parties seem to think could be important evidence and has strained to avoid it.

The Court will now address plaintiff's request to strike the allegedly improperly obtained and untimely hearsay aspect of the expert report. Plaintiff claims that Dr. Blobel's expert report relies on statements from the fact declaration by third party Dr. Bruce Beutler of the University of Texas at Southwestern. Plaintiff claims that: (1) The fact declaration from Dr. Beutler received after the close of fact discovery is "severely prejudicial," and it should not be permitted to be used for "any purpose" in the case, and (2) "under the guise of giving expert testimony, Dr. Blobel improperly repeats ... uncorroborated dates and descriptions from the [declaration] in his report."

The request to strike will be denied subject to the subject being raised as an *in limine* motion. First, there

1 has been no showing that the declaration was improperly
2 obtained.  Dr. Beutler was issued a subpoena on May 26, 2017;
3 served on June 3, which was nearly a month before the close
4 of fact discovery on June 30.  Dr. Beutler filed a motion to
5 quash in the Northern District of Texas on June 20.
6         On June 21, the Northern District of Texas ordered
7 the parties to meet and confer and submit a joint submission
8 summarizing their conference.
9         In a July 5 email, Immunex's counsel stated that it
10 believed that the subpoena was served late in the discovery
11 process and that "it does not seek the deposition of
12 Dr. Beutler" and that Immunex would "attend a deposition if
13 the Court orders one to be conducted."
14         On July 12, the parties advised the Court in the
15 Northern District of Texas that they had reached an agreement
16 on the subpoena, which was to accept a declaration from
17 Dr. Beutler in lieu of deposition.  The declaration was
18 provided on August 18 and provided to Immunex's counsel on
19 the same day.  It should be noted that the parties took
20 depositions through July and August after the close of
21 discovery, with the last deposition being held on August 9,
22 which was nine days prior to the declaration being provided.
23 This history shows that, while late in the period, the
24 subpoena was served in the discovery period.  And the
25 meet-and-confer process was directed by a federal judge in

1  Texas.

2  As for whether Dr. Blobel's report contains hearsay in the form of improperly repeating uncorroborated dates and descriptions from the 2017 Beutler declaration," this is really an evidentiary issue for the trial judge at a later time.  Both sides cite authority for their positions, but the authority is not dispositive of the issue.  The Marvel case cited by plaintiff is a summary judgment and Daubert opinion that involved a supposed expert who "did not bring expertise to bear in any way" and basically was just aggregating hearsay comments from freelance artists in the comic book industry.  See 726 F.3d 119, 136 (2d Cir. 2013).  The Monsanto case is cited for the fairly basic conclusion that experts need not have obtained the basis for his [or her] opinion from personal perception," and that a report may "be based on facts or data that themselves are inadmissible."  These cases reinforce the fact that expert reports may and often are based on hearsay information, and the admissibility of same is an issue of evidence to be decided by the trial judge.

21  Therefore, the Court will not strike that any aspect of the Blobel report on that basis at this time.  Any challenge to the Blobel report and its reliance on the Beutler declaration should be made at the *in limine* phase of the case.

1         Having said that, given the circumstances of the
2    preparation and production of the Beutler declaration, the
3    plaintiff is permitted to serve a subpoena on Dr. Beutler, if
4    it so chooses, and to attempt to take his deposition.
5         That is the end of the Opinion.  It should also be
6    noted that this opinion is going to be temporarily sealed
7    pursuant to 5.3.  The parties have requested that the
8    information reflecting highly confidential patent information
9    is subject to protection and will be filing a formal motion
10   to seal.  Until that occurs, this Opinion should be sealed.
11   And as said before, it should be provided to the Court for
12   proofreading and correction pursuant to Local Rule 52.1.
13              (Conclusion of proceedings)
14
15
16
17
18
19
20
21
22
23
24
25

| | |
|---|---|
| 1 | Certification |
| 2 | I, SARA L. KERN, Transcriptionist, do hereby certify |
| 3 | that the 14 pages contained herein constitute a full, true, |
| 4 | and accurate transcript from the official electronic |
| 5 | recording of the proceedings had in the above-entitled |
| 6 | matter; that research was performed on the spelling of proper |
| 7 | names and utilizing the information provided, but that in |
| 8 | many cases the spellings were educated guesses; that the |
| 9 | transcript was prepared by me or under my direction and was |
| 10 | done to the best of my skill and ability. |
| 11 | I further certify that I am in no way related to any of |
| 12 | the parties hereto nor am I in any way interested in the |
| 13 | outcome hereof. |
| 18 | s/ *Sara L. Kern*     19th of October, 2017 |
| 19 | Signature of Approved Transcriber         Date |

Sara L. Kern, CET**D-338
King Transcription Services
3 South Corporate Drive, Suite 203
Riverdale, NJ  07457
(973) 237-6080