# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

IMMUNEX CORPORATION, AMGEN
MANUFACTURING, LIMITED and
HOFFMAN LA-ROCHE INC.,

        Plaintiffs,

   v.

SANDOZ, INC., SANDOZ INTERNATIONAL
GMBH and SANDOZ GMBH,

        Defendants.

Civil Action No. 16-1118 (CCC)

**CLERK'S OPINION
GRANTING IN PART
AND DENYING IN PART
PLAINTIFFS' MOTION
TO TAX COSTS**

      This matter has come before the Clerk on the motion [Dkt. Entry 750] of Plaintiffs

Immunex Corporation ("Immunex") and Amgen Manufacturing, Limited ("Amgen")

(together, "Plaintiffs") to tax costs against Defendants Sandoz, Inc., Sandoz International

GmbH and Sandoz GmbH (collectively, "Defendants"), pursuant to Federal Rule of Civil

Procedure 54(d) and Local Civil Rule 54.1.  Defendants oppose this motion.

      As the parties are well-aware of the factual and procedural histories of this patent

infringement suit, the Clerk presents herein a very cryptic summary, as is necessary to address

the motion at hand.

      Plaintiffs and Hoffman La-Roche Inc. ("Roche") instituted suit on February 26, 2016

[Dkt. Entry 1], alleging patent infringement by Defendants, under 35 U.S.C. § 271, including

§ 271(e)(2)(C), part of the Biologics Price Competition and Innovation Act ("the BPCIA").

Relevant to this matter, the BPCIA allows for the submission of an abbreviated Biologics

License Application ("aBLA"), seeking FDA authorization to market a biosimilar version

of an approved biologic drug, such as that at issue in this litigation.

The five patents-in-suit covered etanercept, the active ingredient of the biologic drug product, ENBREL®:  United States Patent Nos. 8,063,182 ("the '182 patent"), 8,163,522 ("the '522 patent"), 7,915,225 ("the '225 patent"), 8,119,605 ("the '605 patent"), and 8,722,631 ("the '631 patent").  Immunex is the exclusive licensee of all commercial rights in the '182 and '522 patents, owned by Roche, and is the owner of the '225, '605, and '631 patents. Immunex has granted Amgen an exclusive license/sublicense to the asserted patents.

Defendant Sandoz, Inc. is the United States agent for co-defendants, Sandoz International GmbH and Sandoz GmbH, German and Austrian corporations, respectively, for the purpose of filing regulatory submissions with the Food and Drug Administration ("FDA").  On September 29, 2015, the FDA accepted Defendants' aBLA, seeking to market a biosimilar version of Immunex's ENBREL®.  In their complaint, Plaintiffs and Roche asserted that Defendants committed an act of infringement under 35 U.S.C. § 271(e)(2)(C) when they caused Sandoz Inc. to submit Defendants' aBLA, seeking FDA approval to commercially manufacture, use, offer for sale, sell, distribute in, or import into the United States, Defendants' etanercept product prior to the expiration of the asserted patents.

Because Sandoz Inc. could neither accept nor waive service of process on behalf of its Austrian and German co-defendants, those two entities were served pursuant to the procedures authorized by the Court's Order of June 14, 2016 [Dkt. Entry 65], granting Plaintiffs' unopposed motion pursuant to Federal Rule of Civil Procedure 4(f) [Dkt. Entries 58, 64].  That is, the Court issued Letters Rogatory to the appropriate Judicial Authority of Austria (a non-signatory to the Hague Convention), requesting international assistance to serve the complaint and summons on Sandoz GmbH, and entered an Order appointing Crowe Foreign Services as

the authority to forward to the Central Authority in Germany (a signatory to the Hague Convention, like the United States) the papers to be served in this case, in order to effect service on Sandoz International GmbH.

Pretrial proceedings occurred, with a Markman hearing on February 15, 2017 [Dkt. Entry 146], summary judgment motions by Plaintiffs in September 2017 [Dkt. Entries 221, 225], status conferences in March and April 2018 [Dkt. Entries 421, 423, 424, 425, 444], and *in limine* motions by both sides in June 2018 [Dkt. Entries 512-521].

On June 7, 2018, the Court entered an Amended Consent Preliminary Injunction [Dkt. Entry 509], limiting Defendants' activities regarding its etanercept product.  Pursuant to a stipulation [Dkt. Entry 510] entered that day, the asserted claims of infringement of the '225, '605 and '631 patents were dismissed with prejudice.

By Order entered on September 10, 2018 ("Stipulation of Infringement") [Dkt. Entry 619], Defendants stipulated to infringement of claims 11-12 and 35-36 of the '182 patent, and claims 3, 8 and 10 of the '522 patents, then still at issue.

A 10-day bench trial on the validity of the '182 and '522 patents took place on September 11-14, 17, 18, 20, 21, 24 and 25, 2018.  [Dkt. Entries 621, 622, 627, 629-35].  The parties submitted post-trial briefing, including proposed findings of fact and conclusions of law [Dkt. Entries 645-53], and presented closing arguments on November 19, 2018 [Dkt. Entry 656].

On August 9, 2019, the Court entered its opinion and order [Dkt. Entries 689, 690], finding no invalidity of the '182 and '522 patents, that Defendants infringed the asserted claims of those two patents, pursuant to the September 2018 Stipulation of Infringement, and that the parties remained bound by the terms of the Amended Consent Preliminary Injunction.

On October 7, 2019, the Court entered a Stipulated Permanent Injunction [Dkt. Entry 718], enjoining Defendants, and all related individuals and entities, from making, using, offering to sell, or selling within the United States, or importing into the United States, any product containing etanercept until the later of the expiration of any infringed and valid claim of the '182 patent on November 22, 2028, or any infringed and valid claim of the '522 patent on April 24, 2029.

The Court entered its Final Judgment and Order of Permanent Injunction [Dkt. Entry 719] in favor of Plaintiffs and Roche, and against Defendants, on October 8, 2019, and on that day, Defendants filed their notice of appeal to the Court of Appeals for the Federal Circuit [Dkt. Entry 720].

By letter order of October 22, 2019 [Dkt. Entry 732], the Court granted all parties' requests to extend the time in which to file taxation and attorney's fees motions, until 30 days after the issuance of the Federal Circuit's mandate.

The Federal Circuit affirmed this Court's final judgment on July 1, 2020 [Dkt. Entries 745, 746] and denied Defendants' petition for en banc rehearing, on September 29, 2020 [Dkt. Entry 748].  Its mandate issued on October 6, 2020 [Dkt. Entry 749], and accordingly, within 30 days thereafter, on November 5, 2020, Plaintiffs filed their taxation motion [Dkt. Entry 750], now before the Clerk.

Plaintiffs initially sought a total of $408,749.87 in their bill of costs, AO 133 form [Dkt. Entry 750-2], but decreased their request, in response to Defendants' brief in opposition ("Defs.' Opp.").  Pursuant to their updated bill of costs [Dkt. Entry 755-1], they seek a total of $368,382.46, comprised of the fees of:  the clerk ($400.00); the marshal ($61,680.00); printed and videotaped transcripts ($102,053.36); witnesses ($19,716.60); copies ($41,743.46);

-4-

trial support team ($141,006.00); and courtroom equipment rental and installation ($1,783.04).

Defendants contend that Plaintiffs are entitled to $89,158.11, at most.

## I.      **Legal Standards**

Plaintiffs make this application pursuant to Fed. R. Civ. P. 54(d)(1), which provides

that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs - other

than attorney's fees - should be allowed to the prevailing party."

In the context of patent litigation, "a plaintiff 'prevails' when actual relief on the merits of

his claim materially alters the legal relationship between the parties by modifying the defendant's

behavior in a way that directly benefits the plaintiff." Manildra Milling Corp. v. Ogilvie Mills,

Inc., 76 F.3d 1178, 1182 (Fed. Cir. 1996) (quoting Farrar v. Hobby, 506 U.S. 103, 111-13

(1992)).

While the Federal Circuit established a single definition of prevailing party in patent

cases in order to promote uniformity, it determined that the decision of whether to award costs

to a prevailing party is a matter of regional circuit law.  Id. at 1183.  Therefore, the Clerk's

decisions of whether and how much to tax, is a matter of Third Circuit law.

In this Circuit, there is a strong presumption in favor of awarding costs to the prevailing

party.  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010).  However, absent

express statutory authorization or a court order to the contrary, the Clerk may reimburse only

the following types of costs set forth in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained
>     for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials
>     where the copies are necessarily obtained for use in the case;

    (5) Docket fees under section 1923 of this title;
    (6) Compensation of court appointed experts, compensation of interpreters, and
        salaries, fees, expenses, and costs of special interpretation services under
        section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

Section 1920 provides that a judge or clerk of any federal court "may" tax the above-listed categories of costs. Citing this language, the Crawford Fitting court stated that § 1920 "is phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party." Id. at 442. The Supreme Court there declared that "[t]he discretion granted by Rule 54(d) is . . . solely a power to decline to tax, as costs, the items enumerated in § 1920." Id. Due to the constraints of § 1920, a prevailing party's costs "often fall well short of the party's actual litigation expenses." In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 458 (3d Cir. 2000).

More recently, the Supreme Court reiterated that § 1920 taxable costs are "limited to relatively minor, incidental expenses," and are "narrow in scope." Taniguchi v. Kan Pacific Saipan, Ltd., 566 U.S. 560, 573 (2012) (limiting § 1920 (6) "compensation of interpreters" to oral translation costs, to the exclusion of document translation costs).

Even though it enjoys a presumption in its favor, the prevailing party must provide sufficient information to carry its burden of showing that the sought-after costs fall within the limits of § 1920. Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-02 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by L. Civ. R. 54.1, our local court rule which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920. Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2021 ed.) at 321.

-6-

It is undisputed that these Plaintiffs are the prevailing parties.  They have won final judgment in their favor, i.e., this Court's orders, declaring that their patents are valid and were infringed by Defendants, and a permanent injunction against Defendants, whose behavior has been modified in a way that directly benefits Plaintiffs.

Furthermore, Plaintiffs have satisfied the requirements in L. Civ. R. 54.1 and 28 U.S.C. § 1924 of timeliness and verification: this motion was filed within the extended time frame set by Court order [Dkt. Entry 732]; includes a notice of motion [Dkt. Entry 750]; through the Declaration of Marc D. Haefner, Esq. ("Haefner Decl.") [Dkt. Entry 750-4], and his Reply Decl. ("Haefner Reply Decl.") [Dkt. Entry 755-3], as well as his signature of the AO 133 form declarations [Dkt. Entries 750-2, 755-1], Plaintiffs' counsel has verified that the costs are correct and were necessarily incurred in this action, and that the services for which the fees have been charged were actually and necessarily performed; supporting invoices have been supplied, [Dkt. Entry 751], to accompany counsel's Itemization of Bill of Costs [Dkt. Entry 750-3] and his Updated Itemization of Bill of Costs [Dkt. Entry 755-2], as well as Plaintiffs' Brief ("Pls.' Br.") [Dkt. Entry 750-1].  The Clerk has also considered Sandoz's Opposition to Plaintiffs' Bill of Costs ("Defs.' Opp.") [Dkt. Entry 752], Immunex's Reply Brief ("Pls.' Reply") [Dkt. Entry 755], and counsel's supplemental submissions [Dkt. Entries 756, 757].  Accordingly, the Clerk examines the requested costs below, in the order in which they appear in § 1920.

## II.   Fees of the Clerk and Marshal, § 1920 (1)

Pursuant to § 1920 (1), Plaintiffs request the $400 filing fee as a fee of the clerk, and the $61,680.00 cost associated with serving the summons and complain, including translation, on foreign defendants, Sandoz International GmbH and Sandoz GmbH, as a fee of the marshal.

### *Fees of the Clerk*

The **$400.00** fee, required under 28 U.S.C. § 1914 for the filing of a complaint in federal court, was paid by Plaintiffs [Dkt. Entry 1] and has not been contested by Defendants.  It is clearly a subsection (1) "fee of the clerk" and shall be granted.

### *Fees of the Marshal*

As subsection (1) fees "of the marshal," Plaintiffs seek the $61,680.00 cost of serving the Austrian and German Sandoz defendants, in conformance with the Hague Convention and other procedures allowed by the Court's order [Dkt. Entry 65].  That cost consists of:  Austria Letter rogatory fee ($595.00); Austrian Court Certified German translation of the Summons, Complaint (w/o exhibits) and Letter Rogatory Request ($5,535.00); Austrian Court Certified German translation of Exhibits A-G of the Complaint ($51,975.00); State Department's requisite letter rogatory fee ($2,325.00); Germany Hague service (using Austrian Court's translation) ($595.00); German translation of the order appointing international Process server ($65.00); and additional shipping ($295.00 per country) ($590.00).  Ex. 1 at 8.

This presents a thorny issue, upon which there is a dearth of case law, and certainly, none in the Third Circuit.  Indeed, there is no binding Third Circuit authority addressing the more general issue of the taxation of the costs of private process servers as § 1920 (1) "fees . . . of the marshal," let alone the taxation of potentially very expensive international service under the Hague Convention.  Several federal circuit and district courts have reached different results, based upon varying rationales.

While "'the assessment of costs most often is merely a clerical matter that can be done by the court clerk,'" Taniguchi, 566 U.S. at 573 (quoting Hairline Creations, Inc. v. Kefalas,

664 F.2d 652, 656 (7th Cir. 1981), the Clerk is here tasked with deciding an issue of first impression in this District, to his understanding, and must endeavor to achieve a well-reasoned result. Having reviewed the case law cited by the parties, as well as that uncovered in his independent research, he determines that these costs should be denied entirely, for the reasons that follow.

First, as noted by Defendants (Defs.' Opp. at 7), the sole case cited by Plaintiffs in their initial moving brief is not convincing support for their position. (Pls.' Br. at 3). In FenF, LLC v. Shenzhen Fromufoot, Ltd., the court awarded the plaintiff the following amounts that it spent, in connection with an undisputed default judgment – "$400 on court filing fees, $1,090 for service of the summons and subpoena, and $5,180 on translating various court documents." Case No. 16-12616, 2018 WL 3729073, at *4 (E.D. Mich. Aug. 6, 2018). That constitutes the entirety of the court's costs decision, lacking any analysis whatsoever or citation of Rule 54(d) or § 1920, or even identification of the "various court documents."

Defendants attack this request on a number of grounds. (Defs.' Opp. at 3-7). The Clerk first dispenses with their contention regarding the $57,100.00 cost of translating the complaint. It is true that, as noted in Section I above, in 2012, the Supreme Court unequivocally ruled in the Taniguchi case that the costs of written translation are not taxable under subsection (6) of §1920. However, the Clerk finds the translation cost here to be attendant to the subsection (1) cost of service because translation of the complaint into German was required in order for Plaintiffs to effectuate proper service. Pennsylvania Orthopedic Ass'n v. Mercedes-Benz A.G., 160 F.R.D. 58, 59 (E.D. Pa. 1995) ("The German resolution enacting the Hague Convention states, 'Formal Service (paragraph 1 of Article 5 of the Convention) shall be permissible only if the document to be served is written in or translated into, the German language.' *Federal Civil Judicial*

*Procedure and Rules,* at 42.").  Therefore, this costly translation fee was part and parcel of the cost of service and is not now ruled out on the basis of the <u>Taniguchi</u> holding.

In a similar vein, Defendants object to the shipping portion of the invoice, on the ground that the Clerk routinely denies the costs of shipping, as falling outside the ambit of § 1920. Defs.' Opp. at 6 (citing <u>Supernus Pharm., Inc. v. TWi Pharm., Inc.</u>, 2018 WL 2175765, at *8 (D.N.J. May 11, 2018)).  While this Court has denied such costs, at least since its decision in <u>Bollitier v. Int'l Bhd. of Teamsters</u>, 735 F. Supp. 623, 629 (D.N.J. 1989), the Clerk's decision does not rest on that basis either.

Defendants also speak to the broader aspect of taxing private process server fees, which the Clerk will address later.  However, he first analyzes the authorities on the more specific topic of the taxation of Hague Convention service costs, set forth in Plaintiffs' Reply Brief ("Pls.' Reply at 2), finding that they do not compel a decision in Plaintiffs' favor in this Court either.

In one of the cases cited by Plaintiffs, <u>Lazaridis v. Wehmer</u>, Civ. A. No. 06-793, 2008 WL 4758551, at *1 n.3 (D. Del. Oct. 28, 2008), <u>aff'd on other grounds</u>, 591 F.3d 666 (3d Cir. 2010), the court did not rule on the topic or reference the amount at issue, but stated in dicta that had plaintiff prevailed in the action, he might have sought the costs of translation required to effect service upon foreign defendants.

In the remaining four cited cases, Hague Convention service costs, including translation, were awarded, up to the amount of $6,580.  In the case of <u>Law Office G.A. Lambert & Assocs. v. Davidoff</u>, the court awarded the $875.00 cost of translating the complaint into German, commenting that it was "exercis[ing] its discretion to award these modest costs to Plaintiff," relying on both § 1920 (1) and that court's local civil rule, allowing for the "[c]osts of service of summons and complaint," LCvR 54.1(d)(2).  72 F. Supp. 3d 110, 120 (D.D.C. 2014).

The Law Office case was cited approvingly in another case raised by Plaintiffs, Magic Carpet Ski Lifts, Inc. v. S&A Co., Ltd., because the $875 cost awarded in Law Office was "modest." However, that court actually decided to grant all requested costs, including $1,610.00 for translation, not just "reasonable" court costs, because it did so pursuant to a fee-shifting clause in the parties' agreement, and not pursuant to § 1920. Civ. A. No. 14-cv-02133, 2015 WL 4237950, at *9 (D. Colo. June 8, 2015), report and recommendation adopted, 2015 WL 4162586 (D. Colo. July 9, 2015).

The remaining two cases upon which Plaintiffs rely come out of the Northern District of California, in the Ninth Circuit. That Court allowed $4,622.96 in translation costs incurred in connection with the service of process in Monaco, in Int'l Petroleum Prods. and Additives Co., Inc. v. Black Gold S.A.R.L., Case No. 19-cv-03004, 2020 WL 789567, at *5 (N.D. Cal. Feb. 18, 2020), and the $6,580.00 cost of unsuccessful service in China and translation, in Ingrid & Isabel, LLC v. Bentibo, Case No. 18-cv-01856, 2019 WL 2517524, at *9 (N.D. Cal. May 10, 2019), report and recommendation adopted, 2019 WL 2515713 (N.D. Cal. June 18, 2019). The Ingrid & Isabel court cited the Law Office and Magic Carpet Ski Lifts cases in support. It also relied upon the Northern District of California's local civil rule, Civ. L. R. 54-3(a)(2), which specifically covers this type of cost: "Fees of the marshal as set forth in 28 U.S.C. § 1921 are allowable to the extent actually incurred. Fees for service of process by someone other than the marshal acting pursuant to Fed. R. Civ. P. 4(c), are allowable to the extent reasonably required and actually incurred."

After the parties completed briefing, in his daily review of costs decisions, the Clerk learned of an additional case, denying costly Hague Convention service costs. In SiOnyx, LLC v. Hamamatsu Photonic, K.K., the court disallowed plaintiffs' requested $71,137 cost

-11-

of service of summons and subpoena, including the $69,700 cost of Japanese translation of the amended complaint for service on defendant.  Civ. A. No. 15-13488, 2021 WL 1989991, at *2 (D. Mass. May 18, 2021).  To support their request, plaintiffs there cited the Law Office and International Petroleum Products cases but the court was not swayed, reasoning, "Section 1920 does not include fees for 'service of summons and subpoena' in its list of taxable costs, nor do the procedures of this court."  Id.  That court's procedures referred only to the "fees of the marshal" and therefore, the Law Office and International Petroleum Products cases, which granted the service costs on the basis of their local court rules, were distinguishable.

In handling these taxation motions over the years, the Clerk has become familiar with the different treatment afforded the costs of private process servers generally by the varying federal courts.  The Northern District of California's local rule, underpinning the above-cited decisions granting Hague Convention costs, is reflective of the broad Ninth Circuit standard, which allows the costs of private process server fees, unrestricted in amount.  In Alflex Corp. v. Underwriters Labs., Inc., the Ninth Circuit stated, "[i]n making Marshal's fees taxable as costs in section 1920(1), we believe Congress exhibited an intent to make service of process a taxable item."  914 F.2d 175, 178 (9th Cir. 1990).

On the other end of the spectrum, some courts, like the Eighth Circuit, interpret § 1920 strictly and entirely disallow the taxation of private process server fees because § 1920 "contains no provision for such expenses."  Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985) (citations omitted).

Striking a middle ground, the Sixth, Seventh and Eleventh Circuits permit awards of private process server fees, but only to the extent they do not exceed the United States Marshal's

-12-

fees (which, pursuant to 28 U.S.C. § 1921(b), are set by the Attorney General by regulation, and which are currently "65 per hour (or portion thereof) for each item served ..., plus travel costs and any other out-of-pocket expenses," 28 C.F.R. § 0.114(a)(3)).  Arrambide v. Wal-Mart Stores, Inc., 33 F. App'x 199, 203 (6th Cir. 2002); Collins v. Gorman, 96 F.3d 1057, 1060 (7th Cir. 1996) (disapproving of the Alflex approach, and homing in on § 1920 (1) language of fees "of" the marshal, as opposed to fees paid "to" the marshal); U.S. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 624 (11th Cir. 2000).  In the Seventh Circuit's rather extensive analysis of this topic, in the Collins case, it limited taxation to the "recovery of expenses that do not exceed what the marshal would have charged, for the tasks marshals are authorized to perform," noting the list of those tasks in 28 U.S.C. § 1921(a).  96 F.3d at 1060.

Without guiding Third Circuit precedent on this particular item, the Clerk must look to the Third Circuit's application of § 1920 in connection with other types of costs, and this Court's local rules and its prior treatment of this issue.  First off, the Clerk cannot overlook the fact that the Third Circuit issued one of the most restrictive interpretations, nationwide, of § 1920 (4) "costs of making copies," in its renowned holding in Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 169 (3d Cir. 2012) (shunning decisions that are "untethered from the statutory mooring").

As for this Court's local court rule, L. Civ. R. 54.1, it is silent on the topic of "fees of the marshal."  That silence causes the Clerk to distinguish the Northern District of California and District of Columbia cases, upon which Plaintiffs rely for support.  A sister court within this Circuit, the Middle District of Pennsylvania, recently disallowed the requested $1,605 in private process server fees, holding that § 1920 (1) does not permit the taxation of such fees.  Advanced

<u>Fluid Systems, Inc. v. Huber</u>, Civ. A. No. 1:13-CV-3087, 2021 WL 391986, at *4-6 (M.D. Pa.

Feb. 4, 2021).  In so ruling, Judge Conner reasoned, in part, that "<u>Alflex</u> involved an additional

layer not present here:  the local rules in the subject jurisdiction expressly allowed taxing as costs

the '[f]ees for service of process'. . . ."  <u>Id.</u> at *5.[1]

 Finally, the Clerk must predict how our Court would now rule on this topic, after

examining our Court's prior reasoning, and subsequent developments.  In the case of <u>Hurley v.</u>

<u>Atlantic City Police Dep't</u>, this Court taxed the private process server fees, explaining,

> First, Section 1920(1) authorizes taxation of the costs of the "clerk and marshal." In
> addition, Section 1921 dictates that the marshals are responsible for serving process
> and collecting fees for such service. Moreover, Section 1921 explicitly provides that a
> court may tax as costs, fees for serving a subpoena or summons on a witness.  28 U.S.C.
> § 1921(a)(1)(B). Thus, the combined effect of Sections 1920 and 1921 is that the serving
> of process is a taxable cost.

Civ. No. 93–260, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).  Judge Irenas there adopted

the <u>Alflex</u> approach and concluded that "the combined reading of Sections 1920 and 1921

exhibits an intent to make service of process a taxable item."   <u>Id.</u>

 While Judge Irenas then followed <u>Alflex</u>, the limitations of the <u>Hurley</u> facts and

subsequent developments lead the Clerk to predict that today, this Court would not apply the

<u>Hurley</u> ruling in an unrestricted fashion, so as to allow exorbitant fees of foreign service,

particularly in the absence of a local rule allowing them.  First of all, Hague Convention fees

were not before Judge Irenas.  Secondly, he did not then have the benefit of the Seventh Circuit's

reasoned opinion in the <u>Collins</u> case, limiting fees to the marshals' rate, which issued later

---

 [1] The District of New Jersey envisions amending L. Civ. R. 54.1, in the near future,
and limiting the taxation of private process server fees to the fees set for the United States
marshal by regulation, pursuant to 28 U.S.C. § 1921(b), will be under consideration.

that same month.  Thirdly, subsequent, narrow holdings by both the United States Supreme

Court, in Taniguchi, and the Third Circuit, in Race Tires, evince an intent by those courts to

apply § 1920 in a very restrained manner.

Moreover, the Hurley court's ruling is predicated on the recognition of the widespread

use of private process servers and the observation that they were essentially the modern-day

substitute of the United States marshal.  As noted earlier, in Collins, the Seventh Circuit limited

taxation to the maximum of what the marshal would have charged, "for the tasks marshals are

authorized to perform," pursuant to 28 U.S.C. § 1921(a).  96 F.3d at 1060.   Defendants here

make the point that those tasks do not include serving process on foreign entities.  They contend:

> Immunex apparently seeks to extend that logic to costs associated with service through
> the Hague Convention, but provides no authority for this proposition. Even assuming
> that private process servers are taxable costs, the logic does not simply carry over to
> international service effectuated through the Hague Convention. The Sergeant Hurley
> court, following the Ninth Circuit, at least found a textual hook in § 1921's reference to
> "United States marshals" to allow private service of process within the United States as a
> taxable cost, but there is no such "hook" with respect to international service pursuant to
> the Hague Convention. The United States marshals were never responsible for serving
> process on foreign entities, so this is not a matter of a litigant using an alternative to an
> otherwise express taxable cost. There is no statutory support for taxing costs associated
> with service through the Hague Convention.

Defs.' Opp. at 5.

Additionally, the Clerk will not mold a compromise result, parsing through the various

charges in Plaintiffs' supporting invoice, with the goal of setting a "reasonable" taxable amount.

He will not work backwards from a desired result, and, in any event, that would presuppose that

the fees should be granted in the first instance. Evergreen Pipeline Constr. Co., Inc. v. Merritt

Meridian Constr. Corp., 95 F.3d 153, 172 (2d Cir. 1996) ("But reasonableness is the analysis

we apply when the fees have been granted; it does not provide any authority for granting the

fees in the first instance.").

-15-

In the Evergreen Pipeline Construction Co., Inc. case, the Second Circuit was inclined to follow the moderate Collins view, since only the Marshal's fee amount is statutorily authorized, and found that approach "the most persuasive basis for allowing the award of private process server fees should the district court have chosen to award them." Id. at 172. However, it held that the district court did not abuse its discretion in refusing to award private process server fees. Id.

That point about discretion brings the Clerk back around to the Supreme Court's Crawford Fitting statement that "[t]he discretion granted by Rule 54(d) is not a power to evade this specific congressional command. Rather, it is solely a power to decline to tax, as costs, the items enumerated in § 1920." 442 U.S. at 482. The Clerk is unable to exercise his discretion in taxation matters. In re Paoli R.R. Yard PCB Litig., 221 F.3d at 461-62 (Third Circuit noting that "[t]he clerk of court's role in taxing costs awards, while quasi-judicial, is essentially ministerial," and that "[t]he Clerk in this case acknowledged in his written order that he lacked the discretion to consider certain equities in taxing cost against the Plaintiffs."). He cannot say with certainty how our District Court would exercise its discretion, should Plaintiffs appeal this determination, but all of the foregoing leads him to surmise that the Court would deny the requested service costs. Accordingly, they are disallowed.

### III.   Fees for Printed and Electronically Recorded Transcripts, § 1920 (2)

Under the subsection (2) category of "fees for printed or electronically recorded transcripts necessarily obtained for use in the case," Plaintiffs request the $102,053.36 cost of both printed hearing ($1,566.33) and trial transcripts ($10,588.70), and printed and videotaped deposition transcripts ($89,898.33). Exs. 2-5.

-16-

***Hearing Transcripts***

The hearing transcripts at issue covered the February 15, 2017 Markman hearing, the half-dozen March and April 2018 status conferences, and the June 2018 hearing on pretrial motions.

Defendants do not specifically contest taxing the $529.98 cost of the Markman hearing transcript (Ex. 2), nor the $425.75 cost of the transcript of the June 29, 2018 hearing (Ex. 3), which addressed the parties' combined six pretrial, *in limine* motions [Dkt. Entry 546]. Furthermore, this Court has previously held that the costs of Markman hearing transcripts are "necessarily obtained" and therefore taxable. Pharm. Resources, Inc. v. Roxane Labs, Inc., Civ. A. No. 03-3357, 2008 WL 2951173, at *5 (D.N.J. July 25, 2008).   In that case, Judge Debevoise also granted the costs of the hearing transcripts of the motions to dismiss and for summary judgment, finding them necessary too.  Similarly, the Clerk here determines that the pretrial motion hearing transcript was necessarily obtained in that it covered several substantive matters and was also cited by the Court in its August 15, 2018 opinion [Dkt. Entry 572].

As for the six status conference calls, held on March 6, 9, 12, 13, and 14, 2018, and April 24, 2018, Plaintiffs infer that the calls were long and that therefore, note-taking by counsel would not have sufficed.  Pls.' Br. at 9-10.  However, in response, Defendants point out that the transcripts were brief – in addition to the 14-page transcript of the April hearing, the March transcripts were only 29 to 41 pages long.  Also, they assert that "[t]he March 2018 hearings were short scheduling conferences held at Immunex's own request for the purpose of rescheduling trial due to a medical condition of one of Immunex's lead attorneys" and that "[a]t the April 24, 2018 hearing, the Court set the new trial date and the parties only briefly discussed with the Court what pretrial scheduling issues remained."  Defs.' Opp. at 12-13.

In the Clerk's view, Plaintiffs have not satisfactorily addressed Defendants' points in their reply.  Pls.' Reply at 5.  Like Judge Debevoise in the <u>Pharmaceutical Resources</u> case, the Clerk determines that the transcripts of status conference calls addressing scheduling matters with the magistrate judge, and not involving appeals to the district court, were for the convenience of counsel, and not "necessarily obtained."  Hearing transcripts are granted in the total amount of **$955.73** ($529.98 + $425.75).

### *Trial Transcripts*

Plaintiffs also seek reimbursement of the $10,588.70 cost of the transcripts of 9 days of the 10-day bench trial.  Ex. 4.  They justify the necessity of these transcripts by their several uses.  Plaintiffs' counsel explains: "The trial transcripts in this case were critically necessary in preparing the closing arguments at trial and to prepare witness examination in subsequent days of trial."  Haefner Decl. ¶ 7.  Also, "Immunex relied on these transcripts extensively in drafting the post-trial findings of fact and post-trial briefing. Further, defendants filed a notice of appeal, so these trial transcripts were needed for the record on appeal."  <u>Id.</u>

Defendants do not dispute the obvious necessity of the transcripts, but rather, their over-inclusive services.  They contend that their cost should be granted in the reduced amount of $3,638.10.[2] They point out that the requested $10.50/page rate covers "(1) 3 realtime feeds at $4.20 per page; (2) 'cleaned-up' realtime at $1.50 per page; (3) PDF of completed transcript at $3.62 per page; and (4) ASCII versions at $1.20 per page."  Defs.' Opp. at 13.

---

[2]    Defendants actually state that "[t]he Court should only allow Immunex to recover the transcript costs for the final transcript version at $3.62 per page for 1,005 pages, or $3,618.00."  Defs.' Opp. at 14.  That sum is incorrect and should be $3,638.10.

In response, Plaintiffs merely reiterate the many uses that the transcripts served, and do not proffer any reasons for the extra services beyond the pdf of completed transcript, charged at $3.62/page. Pls.' Reply at 6. Accordingly, the Clerk grants the cost of trial transcripts in the reduced amount of **$3,638.10**.

### *Deposition Transcripts*

This rather complex patent litigation involved many fact and expert witnesses. Plaintiffs' deposition wish list initially included 51 transcripts, taken from 44 deponents, and costing a total of $126,447.84. Itemization of Bill of Costs ¶ 5, Ex. 5.

In response, Defendants objected to taxing the costs of convenience services included in Plaintiffs' request, i.e., "interactive Realtime, rough ASCII, expedition, exhibit copying, exhibit linking, DVD copies, litigation support services (such as charges for 'laptop computer,' 'parking,' 'setup and first hour'), and shipping charges for media." Defs.' Opp. at 8. They submitted a chart listing the charges which they contend are taxable, and which total $53,873.69. Id. at 9-11. It includes just the fees of the printed transcripts of 48 of the 51 depositions originally listed by Plaintiffs, dropping all charges in connection with Dr. Peter Alliger, George W. Johnston, Jr., and Laura Hamill, and all requested video charges. Id.

Plaintiffs answered with their Updated Itemization of Bill of Costs [Dkt. Entry 755-2], showing a new, reduced, total requested cost of $89,898.33. Haefner Reply Decl., Ex. 1. They withdrew all costs related to the Johnston and Hamill depositions, but opined that Defendants' omission of the Alliger costs was likely inadvertent, in that Dr. Alliger's video was played during the trial. Pls.' Reply at 4. The Clerk agrees. [Dkt. Entry 634]. Plaintiffs also withdrew all video costs except for those of the depositions of Arne Skerra ($1,146.32),

-19-

Christopher Vellturo, Ph.D. ($318.75), Dr. Hansruedi Loetscher ($1,383.75), Dr. Manfred Brockhaus ($1,192.75), Dr. Werner Lesslauer ($1,769.75), and Jeffrey Kittendorf ($504.85) - reduced by the costs of video synchronization and shipping.  As for the objected-to extra services connected to the printed transcripts, Plaintiffs withdrew just the costs of rough drafts, Realtime, and shipping/handling, and not charges for exhibits, litigation support packages, production/processing and laptop rental.

Through the Plaintiffs' briefing, and the Clerk's independent review of the docket, including the trial minutes, and especially, the Final Pretrial Order [Dkt. Entry 688], the Clerk has ascertained the relevance to this litigation of all of the deponents' roles.  The depositions clearly satisfy the test of appearing "reasonably necessary to the parties in light of a particular situation existing at the times they were taken."  Thabault v. Chait, No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009).

Having found necessity of the 49 depositions (including the Alliger deposition), the Clerk must still evaluate the reasonableness of the requested costs.  As with other § 1920 costs, he distinguishes between those taxable services which were necessary, and those non-taxable ones, which merely served the convenience of counsel.  For printed transcripts, the Clerk customarily grants just the costs of the original or certified copies of transcripts, in addition to fees for reporter appearance, absent justification by the prevailing party for additional services.

Regarding videotaping costs, Plaintiffs observe, in their reply, that videotaping costs associated with depositions noticed by the losing party are taxable.  Id. at 4, citing Depomed, Inc. v. Actavis Elizabeth LLC, No. 13-4507, 2018 WL 999673, at *8 (D.N.J. Feb. 21, 2018)

-20-

("Defendants' actions alone, of serving video deposition subpoenas, seems [sic] to mean that the video depositions of these witnesses were considered by Defendants to be necessary for trial," quoting Janssen Pharm. N.V. v. Mylan Pharm., Inc., Civ. No. 03–6220, 2007 WL 925535, at *4 (D.N.J. Mar. 23, 2007)).  Also, videotapes played at trial are necessary as well.  Pharm. Resources, 2008 WL 2951173, at * 5 (in denying video costs there, distinguishing Garonzik v. Whitman Diner, 910 F. Supp. 167, 171 (D.N.J. 1995), in that the videotapes were neither played for the court nor shown to have a use independent of the printed transcripts).

In their reply, Plaintiffs contend that "the numerous depositions of Immunex's witnesses were noticed by defendants," and that "Immunex had no choice but to incur those deposition costs, including the video recording and exhibit costs."  Pls.' Reply at 4.  They argue that the video expenses were necessary as well because "Immunex used these deposition transcripts and exhibits at trial in witness preparation and/or for trial," id. at 5.

Plaintiffs have not provided convincing justification for the extraneous convenience services, to which Defendants object, in connection with both the printed and videotaped transcripts.[3] Pls.' Reply at 4-5.  Therefore, the Clerk adopts the figures in Defendants' chart (except for a couple of needed corrections), plus the omitted costs of reporter appearance, as well as most of the basic requested video costs, i.e., "video-initial fee," "video-additional hours," but not those for "processing and delivery," "video archive," and the like.

---

[3]     The costs conceded by Defendants include the elevated costs of expedited service for some depositions.   Considering that Defendants have not objected to those costs, normally requiring explanation, they will not be deducted.

Basic videotaping charges for five of the six deponents at issue will be granted.  The videotapes of Brockhaus, Lesslauer and Kittendorf were played at trial.  [Dkt. Entry 630]. While they testified live at trial [Dkt. Entries 629, 633], Loetscher and Vellturo were Plaintiffs' fact and expert witnesses, whose depositions may have been noticed as video depositions by Defendants.  Deponent, Skerra, however, was Defendants' expert witness, not Plaintiffs' witness, and he appeared at trial live [Dkt. Entry 634], not by videotape.  Therefore, the Skerra videotaping costs will be excluded.  Also, the submitted costs for the Alliger deposition are solely for a video, and not printed, transcript, and therefore, those videotaping costs will be allowed too.

Based upon all of the foregoing, the Clerk grants the following transcript costs:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Arne Skerra** | |
| Orig. transcript | $  2,346.72 |
| Reporter appearance | $     138.00 |
| | |
| **Carl P. Blobel, 1/15/18** | |
| Orig. transcript | $  1,908.82 |
| Reporter appearance | $     249.55 |
| | |
| **Carl P. Blobel, 1/16/18** | |
| Orig. transcript | $  1,567.96 |
| Reporter appearance | $     289.80 |
| | |
| **Christopher Vellturo** | |
| Certified transcript | $  1,474.60 |
| Video | $     318.75 |
| | |
| **Cindy Cao** | |
| Orig. transcript | $  1,919.30 |
| Reporter appearance | $     101.20 |
| | |
| **Daniel J. Capon, 1/31/18** | |
| Orig. transcript | $  2,400.70 |

| Deponent | Taxed Amount |
|---|---|
| **Daniel J. Capon, 2/1/18** | |
| Orig. transcript | $ 2,562.22 |
| | |
| **Daniel N. Sauder** | |
| Orig. transcript | $ 1,317.83 |
| | |
| **DeForest McDuff** | |
| Orig. transcript | $ 1,370.26 |
| Reporter appearance | $ 233.45 |
| | |
| **Hansruedi Loetscher, 5/11/17**[4] | |
| Orig. transcript | $ 2,435.60 |
| Reporter appearance | $ 147.50 |
| Video-Services (50% of $375.00) | $ 187.50 |
| Video-Additional Hours (50% of $1,312.50) | $ 656.25 |
| | |
| **Hansruedi Loetscher, 5/12/17** | |
| Orig. transcript | $ 1,509.70 |
| Reporter appearance | $ 147.50 |
| Video-Initial Fee (50% of $375.00) | $ 187.50 |
| Video-Additional Hours (50% of $525.00) | $ 262.50 |
| | |
| **Kathryn E. Stein** | |
| Orig. + one certified copy | $ 745.50 |
| Reporter appearance ("Hourly") | $ 125.00 |
| | |
| **M. Patricia Beckmann** | |
| Certified transcript | $ 540.20 |
| | |
| **Manfred Brockhaus** | |
| Orig. transcript | $ 1,564.20 |
| Reporter appearance | $ 220.50 |
| Video-Initial Fee | $ 187.50 |
| Video-Additional Hours | $ 831.25 |
| | |
| **Peter Alliger** | |
| Videography Services-Full Day ($825.00-8%) | $ 759.00 |

---

[4]     The costs in Defendants' chart for Loetscher, on 5/11/17 and 5/12/17, for $1,464.25 and $769.50, respectively, appear to have been taken, incorrectly, from the invoices for videotaping charges.  Also, Defendants' listed charge for Kathryn E. Stein, below, was very slightly understated, by $.50.

| **Deponent** | **Taxed Amount** |
|---|---|
| **Roy Fleischmann** | |
| Certified transcript | $    883.30 |
| **Tadahiko Kohno** | |
| Certified transcript | $  1,253.00 |
| **Warner C. Greene** | |
| Certified transcript | $  1,241.00 |
| **Werner Lesslauer, 5/23/17** | |
| Orig. transcript | $  1,281.15 |
| Reporter appearance | $    147.50 |
| Video-Initial Fee | $    187.50 |
| Video-Additional Hours | $    743.75 |
| **Werner Lesslauer, 5/24/17** | |
| Orig. transcript | $  1,134.90 |
| Reporter appearance | $    147.50 |
| Video-Initial Fee | $    187.50 |
| Video-Additional Hours | $    525.00 |
| **Zlatko Dembic** | |
| Certified transcript | $    616.20 |
| **Gautier Sala** | |
| Orig. transcript | $  1,026.72 |
| Reporter appearance | $    138.00 |
| **Graham Jones** | |
| Certified transcript | $  1,470.95 |
| **Gregory Oakes** | |
| Orig. transcript | $    825.79 |
| Reporter appearance | $      50.60 |
| **James Krueger** | |
| Certified transcript | $    525.60 |
| **James Naismith, 1/8/18** | |
| Certified transcript | $  1,698.50 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **James Naismith, 1/10/18** | |
| Certified transcript | $ 1,066.50 |
| **Jeffrey Kittendorf** | |
| Orig. transcript | $ 503.42 |
| Reporter appearance | $ 72.45 |
| Setup and First Hour-Videography | $ 322.00 |
| Video Hourly | $ 136.85 |
| **Johann Gudjonsson** | |
| Certified transcript | $ 292.50 |
| **John Peter Parise** | |
| Certified transcript | $ 627.80 |
| **Kathleen Fowler** | |
| Certified transcript | $ 899.50 |
| **Kurt R. Karst** | |
| Orig. transcript | $ 1,915.63 |
| Reporter appearance | $ 265.65 |
| **Leander Lauffer** | |
| Certified transcript | $ 1,022.00 |
| **Martin Schiestl** | |
| Orig. transcript | $ 1,426.00 |
| Reporter appearance | $ 161.00 |
| **Mary Kuntz Crow** | |
| Orig. transcript | $ 1,064.62 |
| Reporter appearance | $ 138.00 |
| **Michael Kirschner** | |
| Certified transcript | $ 980.00 |
| **Nicholas P. Godici** | |
| Orig. transcript | $ 1,506.60 |
| Reporter appearance | $ 209.30 |
| **Raymond Goodwin** | |
| Certified transcript | $ 386.90 |

| **Deponent** | **Taxed Amount** |
|---|---|
| **Stephen G. Kunin**<br>Certified transcript | $    339.45 |
| **Steven Gillis**<br>Certified transcript | $    594.95 |
| **Stewart Lyman**<br>Certified transcript | $    598.60 |
| **Stuart Watt**<br>Certified transcript | $    573.05 |
| **Taruna Arora**<br>Certified transcript | $    726.00 |
| **Terri Davis Smith**<br>Certified transcript | $    547.50 |
| **Randolph Wall, 12/16/16**<br>Certified transcript | $    732.60 |
| **Randolph Wall, 2/1/18**<br>Certified transcript | $  1,912.68 |
| **Randolph Wall, 2/2/18**<br>Certified transcript | $    808.11 |
| **Ueli Gubler**<br>Certified transcript | $    594.95 |
| **Zhengyu Liu**<br>Orig. transcript<br>Reporter appearance | $    845.66<br>$    138.00 |
| **Total:** | **$ 64,199.09** |

Combining the granted costs of hearing ($955.73), trial ($3,638.10), and deposition

transcripts ($64,199.09), fees for transcripts are taxed in the total amount of **$68,792.92**, pursuant

to § 1920 (2).

-26-

IV.    **Fees for Witnesses, § 1920 (3)**

Plaintiffs' updated bill of costs shows a § 1920 (3) witness fees demand in the amount of $19,716.60, after Plaintiffs dropped those originally sought in connection with their corporate representative, Stuart Watt, disputed by Defendants.  That figure consists of the sought-after costs of witness subsistence ($10,045.00), appearance ($1,040.00), and travel ($8,631.60), relative to the appearance at trial of Randolph Wall, Warner C. Greene, James Naismith, Hansruedi Loetscher, Christopher Vellturo (absent travel), Roy Fleischmann, and Stephen G. Kunin, who stayed at a Harrison, NJ hotel, near the Newark courthouse.

Witness fees are fixed by 28 U.S.C. § 1821, as indicated in L. Civ. R. 54.1(g) (1). Section 1821 provides for the payment of witnesses' fees and allowances for their attendance in federal court.  28 U.S.C. § 1821(a)(1).  Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."  Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.  The applicable GSA per diem rates for the Newark area, during the trial in September 2018, are $141/night for lodging, and $64/day for meals and incidental expenses ("M&IE"), except for the first and last day of travel, for which the M&IE allowance is $48.00. http://www.gsa.gov/perdiem.

Each witness testified on only one day of trial, yet Plaintiffs request multiple days of subsistence for each of them, as follows:  Wall, 10 days; Greene, 14 days; Naismith, 6 days; Loetscher, 4 days; Vellturo, 11 days; Fleischmann, 2 days; and Kunin, 2 days.  Ex. 6.  Plaintiffs arrive at their $10,045.00 subsistence total by multiplying the total 49 days by $205.00 ($141/day for lodging + $64/day for M&IE).  Plaintiffs' counsel asserts that these witnesses had to arrive several days before their testimony, i.e., 9 days for Wall, 7 days for Greene, 5 days for Naismith, and 7 days for Vellturo, "to hear an opposing expert's testimony."  Haefner Decl., ¶ 9.  Counsel explains that Loetscher, who hailed from Switzerland, had to arrive 3 days in advance of his testimony "to allow time to adjust to time changes and be prepared to testify at trial."  Id.  The remaining two witnesses, Fleischmann and Kunin, arrived in Newark on the day preceding their day of testimony.  Id.

Requested days of attendance, for purposes of the $40 statutory fee, are fewer, at: Wall, 5 days; Greene, 6 days; Naismith, 3 days; Loetscher, 4 days; Vellturo, 4 days; Fleischmann, 2 days; and Kunin, 2 days.  Ex. 8.  Multiplying the 26 days by $40 renders Plaintiffs' total requested fees of $1,040.   Plaintiffs state that "[t]he appearance fees are for trial days that each witness had to be in Court for actual testimony, potential testimony, presence to hear an opposing expert, or potential rebuttal testimony."  Itemization of Bill of Costs at 8 n.1.

Witness travel costs include roundtrip airfare between Newark and Switzerland (Loetscher), England (Naismith), California (Wall, Greene) and Texas (Fleischmann), and Amtrak fare from Virginia (Kunin), as well as a few Uber and taxi fares incurred by Kunin and Fleischmann.  Plaintiffs have appropriately reduced unreasonable business and first-class

airfare rates to economy rates.  Plaintiffs' travel total of $8,631.60 is slightly off from that calculated by the Clerk of $8,632.01.

Defendants do not object to the travel costs, but assert that the subsistence costs should accord with the number of days of attendance presented by Plaintiffs, and therefore, be reduced to $5,330.00.  Defs.' Opp. at 14-16. Adding that cost to the $1,040.00 in attendance fees and (incorrect) travel cost of $8,631.60 brings their recommended witness fee total to $15,001.60.

The term "attendance" in § 1821 means "necessary attendance."  Hurtado v. United States, 410 U.S. 578, 583-87 (1973).  A witness is in necessary attendance in court when he is ready and available to testify.  Id. at 584.  Witness fees may be granted for those days on which the witness attended the trial before actually testifying, but only if the witness was holding himself available to testify.  Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 335 (5th Cir. 1995) (citing Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1552-53 (5th Cir. 1984)).

In a case in point, Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth., the prevailing party sought $120 for three days of attendance fees, even though the witness testified on only two days.  193 F.R.D. 26 (D.P.R. 2000), aff'd, 295 F.3d 108 (1st Cir. 2002).  The movant tried to justify the fees by stating that the witness was "available for consultation during the three days." Id. at 36.  The court rejected the movant's argument, explaining that "[a]ttendance for the purpose of consultation is not necessary attendance within the meaning of 28 U.S.C. § 1821(b)." Id.  Likewise, the court reduced the requested $360 witness fee for another witness who attended trial on nine days, but testified on only one day and made himself available for consultation on the other eight days.  The court reiterated, "statutory attendance fees exist to compensate

-29-

witnesses for their attendance at trial, not to compensate experts for their advice." Id.  For both witnesses, the court granted the $40 per diem fee only for those days on which the witnesses testified, and traveled to and from the courthouse.

Using the above case law as a guide, the Clerk must make modifications to Plaintiffs' requests as follows.  First, he adds as days of attendance, and allows subsistence costs for, those additional days dedicated to the witness' travel, pursuant to § 1821(b).  The costs of lodging and M&IE will be calculated separately, not granted as a lump sum of $205/day.  Days of travel alone, not paired with actual or potential testimony (such as when a witness returned home on the day of his/her testimony), will be allotted the travel M&IE of $48.00, instead of $64.00.

Secondly, Plaintiffs have incorporated, in their tally of appearance days, those days of "presence to hear an opposing expert," in addition to days of actual testimony, potential testimony or potential rebuttal testimony (such as Mr. Greene on September 24, after the Skerra testimony).  These are shown in Plaintiffs' Exhibit 8 calendar predominantly on the first days of trial, during Defendants' case, as attendance by Wall, Greene, Naismith and Vellturo.  Those related fees are non-taxable, under the Pan Am. Grain Mfg. Co. case, and will be excluded.

In accordance with the above, in addition to the travel costs of **$8,632.01**, fees are allowed for the seven witnesses as follows:

*Randolph Wall, Ph.D.* – This witness from California testified on September 20, was available to testify on September 19, and will be allotted an additional two travel days.  Fees include: 4 days of attendance (4 x $40 = $160); 3 nights of lodging (3 x $141 = $423); 2 days of full M&IE (2 x $64 = $128); and 2 travel days of M&IE (2 x $48 = $96); or a total of **$807.00**.

-30-

_Warner C. Greene, M.D., Ph.D._ – This witness, also from California, testified on September 18, and was available to testify both on September 17, and on September 24, as as a potential rebuttal expert.  Including an additional two days for travel, allowed fees are for: 5 days of attendance (5 x $40 = $200); 4 nights of lodging (4 x $141 = $564); 3 days of full M&IE (3 x $64 = $192); and 2 days of travel M&IE (2 x $48 = $96); or a total of **$1,052.00**.

_James Naismith, Ph.D._ – Mr. Naismith testified on September 18, and was available to testify on September 17.  As he flew in from London, two additional travel days must be allowed.  His fees include:  4 days of attendance (4 x $40 = $160); 3 nights of lodging (3 x $141 = $423); 2 days of full M&IE (2 x $64 = $128); and 2 travel days of M&IE (2 x $48 = $96); or a total of **$807.00**.

_Hansruedi Loetscher, Ph.D._ – This witness, from Switzerland, was available to testify on Friday, September 14, but only testified on the following Monday, September 17.  He then left that evening, after court. In addition to his two days of testimony/potential testimony, the Clerk will allow two days for his international travel.  Allowed fees are:  4 days of attendance (4 x $40 = $160); 3 nights of lodging (3 x $141 = $423); 2 days of full M&IE (2 x $64 = $128); and 2 travel days of M&IE (2 x $48 = 96); or a total of **$807.00**.

_Christopher Vellturo, Ph.D._ – Plaintiffs have not requested travel costs in connection with this witness.  The Clerk does not know his place of residence but presumes the Boston area, based upon his credentials.  Mr. Vellturo testified on September 21 and was available to testify on September 20.  He will be allowed only one additional day for travel, on September 19, as he could return home on the same day of his testimony, with Court adjourning by 1:00 PM.  Included fees are for:  3 days of attendance (3 x $40 = $120); 2 nights of lodging

(2 x $141 = $282); 2 days of full M&IE (2 x $64 = $128); and 1 travel day of M&IE ($48); or a total of **$578.00**.

_Roy Fleischmann, M.D._ – The records show that this witness arrived from Texas on September 19, the same day he was available to testify, and actually testified on September 20. Court did not adjourn until 6:30 PM that day, so he will be allowed an additional day for traveling home.  Allow fees are for:  3 days of attendance (3 x $40 = $120); 2 nights of lodging (2 x $141 = $282); 2 days of full M&IE (2 x $64 = $128); and 1 travel day of M&IE ($48); or a total of **$578.00**.

_Stephen G. Kunin, J.D._ – This witness, who traveled via the Amtrak train, arrived in Newark from Virginia, on September 20, when he was available to testify.  He actually testified on September 21, and could leave for home that same day, as Court adjourned by 1:00 PM. His fees include:  2 days of attendance (2 x $40 = $80); 1 night of lodging ($141); and 2 days of full M&IE (2 x $64 = $128); or a total of **$349.00**.

In sum, pursuant to § 1920 (3), witness fees are taxed in the total amount of **$13,610.01** ($8,632.01 + $807.00 + $1,052.00 + $807.00 + $807.00 + $578.00 + $578.00 + $349.00).

## V. __The Costs of Making Copies, § 1920 (4)__

Plaintiffs' next request, made under the § 1920 (4) category of the "costs of making copies," is comprised of two types of copies:  photocopies made for trial exhibits and witness binders ($30,280.71); and TIFF conversion of documents ($11,462.75).  Exs. 16, 17.  Defendants argue for a reduced allowance of photocopy costs, but do not contest the TIFF conversion costs.[5]

---

[5]        While Defendants do not dispute the requested $11,462.75 in TIFF conversion costs, that amount is not included in their conclusory chart of suggested taxable costs, Defs.' Opp. at 19-20, and the Clerk believes that omission was inadvertent.

The Clerk easily grants the unopposed costs of converting the electronically stored information ("ESI") into TIFF.  He salutes Plaintiffs for refraining from seeking the nontaxable costs of hosting, processing, and the like, so frequently encountered in these taxation motions. Having reviewed the substantiating invoices, Ex. 17, which describe the services as "TIFF Image Create" and "Create TIFF Images," the Clerk finds these costs are of the type allowed by the Third Circuit in the Race Tires case.  674 F.3d at 166-67.  This requested **$11,462.75** cost is granted.

The other § 1920 (4) cost, for $30,280.71, has been described by Plaintiffs' counsel as that for "printing and photocopying in connection with preparing of witness binders, including *copies for Immunex,* the witnesses, opposing counsel, and the Court."  Haefner Decl. ¶ 18 (emphasis added).  Noting, as the Clerk does, that some of the copies were admittedly made for Plaintiffs, Defendants also observe that during the trial, Plaintiffs' team members had multiple copies of the witness binders for their own use.  Defs.' Opp. at 17, n.3.  Defendants also dispute taxing the costs of non-taxable items included in Plaintiffs' supporting invoices from Epiq of tabs, binding, three-ring binders of varying sizes, redwelds, custom tabs, and labor.

Like other categories of costs, the costs of copies which were not necessary, and which merely served the convenience of counsel, are nontaxable.  Photocopies required to be provided to the Court and opposing counsel are considered necessary, whereas those made for the prevailing party and its counsel are not.  Furthermore, the stationary type items listed above are considered to be akin to attorney's fees and are nontaxable.  Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011); Laura P. v. Haverford School Dist., Civ. A. No. 07-5395, 2009 WL 1651286, at *9 n.10

(E.D. Pa. June 12, 2009); Close-Up Int'l, Inc. v. Berov, Civ. A. No. 02-CV-2363, 2007 WL

4053682, at *11 (E.D.N.Y. Nov. 13, 2007).

The Clerk adopts Defendants' position, agreeing that Plaintiffs have not satisfied their

burden of separating out the necessary copies.  He will grant two-thirds of the cost of just the

photocopies themselves (of which Defendants do not contest the rates charged):  $7,536.32 +

$14,603.00 + $64.19 + $732.50 + $169.84 = $23,105.85 x .67 = **$15,480.92**.

Combining the allowed cost of photocopies with the granted ESI costs ($11,462.75),

the Clerk taxes § 1920 (4) costs at **$26,943.67** in total.

### VI.     **"Other costs" of Trial Support Team Fees and Courtroom Equipment**

The final item on Plaintiffs' updated bill of costs, listed as "Other costs," in the amount

of $142,789.04, consists of trial support team fees ($141,006.00), Ex. 18, and Plaintiffs' share of

the cost of rental and installation of courtroom equipment ($1,783.04), Ex. 19.

While this is, by far, the greatest cost requested by Plaintiffs, it is the one most lacking

in legal support.  In an attempt to satisfy their initial burden, Plantiffs rely solely upon one case

in this District, after conceding that "neither Section 1920 nor Local Civil Rule 54 explicitly

allow the recovery of costs for a trial support team."  Pls.' Br. at 16.  They contend that "[u]se

of a trial support team was reasonably necessary to organize and streamline the presentation of

evidence, trial exhibits, and demonstratives to the Court," and that "trial occurred in a courtroom

without advanced audiovisual display capabilities, audiovisual equipment had to be provided

by the parties, and the operation of this audiovisual equipment required the use of competent

technicians."  Id.

If taxable, these requested costs would have to fall under the "exemplification" prong

of § 1920 (4)'s provision for "[f]ees for exemplification and the costs of making copies of any

materials where the copies are necessarily obtained for use in the case."  And yet, the Third

Circuit and this District Court have not defined that term, which has been given varied meaning

by other courts.

Plaintiffs' only support lies in this Court's ruling in <u>Ricoh Corp. v. Pitney Bowes Inc.</u>,

a patent infringement case, in which Judge Brown granted the unspecified costs of technical

services provided at trial because they were "essential to a large or complex case." Civ. No.

02–5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007) (citation omitted).  However, Judge

Brown also there taxed the costs of legal research, now universally regarded as nontaxable

under § 1920, on the ground that "computer-assisted research is also essential to modern

complex litigation."  <u>Id.</u> at *4 (citation omitted).

As with <u>Hurley</u>, discussed in Section II. above, this Court's decision in the <u>Ricoh Corp.</u>

case pre-dated the restrictive rulings in the <u>Taniguchi</u> and <u>Race Tires</u> cases.  Since those

decisions, there has been much support for denying these types of requested costs, evident to

the Clerk in his regular reading.  For a recent example, see <u>United Biologics, L.L.C. v. Allergy</u>

<u>and Asthma Network/Mothers of Asthmatics, Inc.,</u> Case No. 5:14-cv-35, 2021 WL 1968294,

at *11-13 (W.D. Tex. May 17, 2021).  And the Clerk is in the custom of denying such costs.

Defs.' Opp. at 18-19; [Dkt. Entry 756 at 4-5].

As discussed earlier in connection with international service fees, where there is no

explicit provision in either § 1920 or this Court's local rules allowing the requested costs, the

Clerk is not at liberty to grant them because he cannot exercise his discretion, as can the district

court.  For that reason, he must deny the costs of trial technicians and equipment rental, until

such time as legal support exists for their taxation.  This entire $142,789.04 cost is denied.

## VII.   <u>Summary</u>

To conclude, costs are granted in favor of Plaintiffs and against Defendants as follows:

Fees of the clerk and marshal, § 1920 (1):      $     400.00

Cost of transcripts, § 1920 (2):              $ 68,792.92

Witness fees, § 1920 (3):                    $ 13,610.01

Cost of making copies, § 1920 (4):          <u>$ 26,943.67</u>

**TOTAL:**                                  **$109,746.60**

For the reasons set forth above, the motion of Plaintiffs Immunex Corporation and

Amgen Manufacturing, Limited to tax costs against Defendants Sandoz, Inc., Sandoz

International GmbH and Sandoz GmbH is hereby **GRANTED IN PART AND DENIED**

**IN PART**.  An appropriate order follows.


                                        By:  <u>s/John T. O'Brien</u>
                                              Deputy Clerk

July 23, 2021

-36-